IN THE CIRCUIT COURT OF
BULLOCK COUNTY, ALABAMA

GLENDORA TURNER, Individually, *
and as Administratrix of the Estate of *
WILLIAM LEE TURNER, deceased, *
                                   *
        Plaintiff. *
                                   *
v. * CASE NO. CV-05-76
                                   *
MERCK & CO., INC., a foreign *
Corporation; ANNE BRANDON, an *
Individual; LAMONDE RUSSELL, an *
Individual; and fictitious defendants *
A, B, C & D, being those persons, firms *
or Corporations whose fraud, scheme to *
defraud, and/or other wrongful conduct * **JURY TRIAL DEMANDED**
caused or contributed to the Plaintiff's *
injuries and damages, and whose true *
names and identities are presently *
unknown to Plaintiff, but will be *
substituted by amendment when *
ascertained, *
                                   *
        Defendants. *

**FILED IN OFFICE**

**JUN 27 2005**

CLERK-REGISTER, BULLOCK CO., ALA.

## COMPLAINT

COMES NOW, Glendora Turner, ("Plaintiff"), complaining of Merck & Co., Inc., individual sales representatives Anne Brandon and Lamonde Russell, and fictitious defendants A, B, C & D, ("Defendants"), and for Plaintiff's cause of action against the Defendants states as follows:

### Statement Of The Parties

1. This is a civil action brought by Plaintiff Glendora Turner, on behalf of her decedent, William Lee Turner, for his death and pre-death injuries and suffering. Plaintiff's

decedent was prescribed and used the prescription medication VIOXX (Rofecoxib). This action seeks monetary damages for personal injuries and wrongful death caused by the prescription medication VIOXX (Rofecoxib) ingested by Plaintiff's decedent.

2. Plaintiff Glendora Turner is over the age of 19 years and is a resident of Bullock County, Alabama.

3. Plaintiff's decedent, William Lee Turner, was an adult resident of Bullock County, Alabama at the time of his death.

4. Defendant Merck & Co., Inc. (hereinafter referred to as "Merck"), is incorporated in the State of New Jersey and has its principal place of business in White House Station, New Jersey. At all times relevant herein, Merck was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals and other products, including VIOXX. Merck does business by agent in Alabama and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed VIOXX in Bullock County, Alabama. Defendant Merck can be served through its registered agent: Corporation Process Company, 2000 Interstate Park Drive, Suite 204, Montgomery, AL 36109.

5. Based upon information and belief, Defendant Anne Brandon is a district sales manager for Defendant Merck, and is a resident of Tuscaloosa County, Alabama. Defendant Anne Brandon can be served at her home address: 7 Lauderhill, Tuscaloosa, AL 35406.

6. Based upon information and belief, Defendant Lamonde Russell is a sales representative for Defendant Merck, and is a resident of Shelby County, Alabama. Defendant Lamonde Russell can be served at his home address: 102 Amanda Place, Pelham, AL 35124.

7. Fictitious Defendants A, B, C & D, are other legal persons (including retailers, pharmacies, sales representatives and manufacturers) who manufactured, labeled, advertised, marketed, promoted, sold and/or distributed VIOXX in Alabama.

8. When the word "Defendants" is used herein, it is meant to refer to all real and fictitious Defendants mentioned in the style of this Complaint, all of whom are jointly and severally liable to Plaintiff for Plaintiff's decedent's injuries and death.

9. At all times material to this complaint, each Defendant acted as an agent for each of the other Defendants, within the course and scope of the agency, regarding the acts and omissions alleged herein, and are therefore jointly and severally liable to Plaintiff for Plaintiff's decedent's injuries and death.

## Statement Of The Facts

10. This is a civil action brought by the Plaintiff, Glendora Turner, both individually and on behalf of her husband, as the widow of the deceased, William Lee Turner, who was prescribed and used the prescription medication VIOXX (Rofecoxib) causing him to suffer a heart attack and death on June 30, 2003.

11. Personal jurisdiction and subject matter jurisdiction are appropriate in this court to all Defendants, as all Defendants have sold VIOXX in Alabama, in or near Bullock County, either directly or by agent, with the actual or constructive knowledge that the VIOXX they sold would ultimately be ingested by the Plaintiff's decedent, William Lee Turner, in Bullock County, the Plaintiff's decedent's county of residence, and therefore all Defendants have thus availed themselves of this jurisdiction.

12. The Defendants have sold VIOXX in Alabama, in or near Bullock County, either directly or by agent, with knowledge, actual or constructive, that the VIOXX they sold would

- 3 -

ultimately be ingested by the Plaintiff's decedent, William Lee Turner, in Bullock County, the Plaintiff's decedent's county of residence, and that any damage or injury to William Lee Turner that may result from his use of VIOXX, including heart attack and/or death, would result from his ingestion of VIOXX in Bullock County. Thus venue is therefore proper in Bullock County as to all Defendants pursuant to Ala. Code Ann. § 6-3-2. The claims of the Plaintiff herein satisfy the jurisdictional amount of this Court.

13. VIOXX (Rofecoxib) is a prescription drug designed to treat pain through reduced inflammation; VIOXX (Rofecoxib) is a cox-2 selective non-steroidal anti-inflammatory agent (NSAID). Defendants did manufacture, design, package, market, sell and distribute this drug. The Defendants encouraged the use of this drug through an aggressive marketing campaign, including through its detail sales representatives and direct-to-consumers. Defendants misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Defendants' actions combined and contributed to cause Plaintiff's decedent's injuries, and thus are jointly and severally liable

14. At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's decedent's individual rights, and hence punitive damages are appropriate.

15. William Lee Turner was prescribed and used the prescription medication VIOXX (Rofecoxib) for 21 months before suffering a fatal heart attack on June 30, 2003. William Lee

Turner ingested the prescription medication VIOXX (Rofecoxib) in Bullock County, Alabama and the damage and injuries resulting from William Lee Turner's use of the prescription medication VIOXX (Rofecoxib) occurred in Bullock County, Alabama. William Lee Turner was 56 years old at the time of his death.

## COUNT I – STRICT LIABILITY

16. Plaintiff alleges all prior paragraphs of this complaint as if fully set out herein.

17. The pharmaceutical VIOXX (Rofecoxib) designed, manufactured, sold and/or supplied by Defendant, was placed into the stream of commerce in a defective and unreasonably dangerous condition as designed, taking into account the utility of the product and the risk involved in its use.

18. Further, the pharmaceutical VIOXX (Rofecoxib) designed, manufactured, distributed, sold and/or supplied by Defendant was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign.

19. The pharmaceutical VIOXX (Rofecoxib) designed, manufactured, distributed, sold, and/or supplied by Defendant was defective due to inadequate testing.

20. Additionally, Defendant failed to provide timely and adequate warnings or instructions after the manufacturer knew of the risk of injury from VIOXX (Rofecoxib). The defective nature of this product was a contributing cause of William's injuries and death.

WHEREFORE, the Plaintiff demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT II – NEGLIGENCE

21. Plaintiff realleges all prior paragraphs of this complaint as if fully set out herein

22. Defendant had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendant failed to exercise ordinary care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendant knew or should have known that VIOXX (Rofecoxib) created an unreasonable risk of bodily harm, including the risk of death.

23. Despite the fact that the Defendant knew or should have known that VIOXX (Rofecoxib) caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, the Defendant continued to market VIOXX (Rofecoxib) to the consuming public when there were adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

24. Defendant knew or should have known that consumers such as William would foreseeably suffer injury or death as a result of the Defendants' failure to exercise ordinary care as described herein. Defendants' negligence was a contributing cause of William's injuries and death.

WHEREFORE, Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT III – BREACH OF EXPRESS WARRANTY

25. Plaintiff realleges all prior paragraphs of this complaint as if fully set out hereto.

26. Defendants made express representations to William relative to its product, VIOXX (Rofecoxib).

27. Defendant Merck, through its detail sales representatives, made representations regarding the safety and efficacy of its product, VIOXX (Rofecoxib).

28. VIOXX (Rofecoxib) does not conform to the express representations made to William.

29. VIOXX (Rofecoxib) does not conform to the express representations made by the Defendant Merck's agents/sales representatives.

30. Defendant's conduct in this matter was a contributing cause of William's injuries and death.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

### COUNT IV – BREACH OF IMPLIED WARRANTY

31. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

32. At the time Defendant marketed, sold and distributed VIOXX (Rofecoxib) for use by the general consuming public, including William, the Defendant knew of the use for which VIOXX (Rofecoxib) was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

33. William reasonably relied upon the skill and judgment of the Defendant as to whether VIOXX (Rofecoxib) was of merchantable quality, and safe and fit for its intended use.

34. Contrary to such implied warranty, VIOXX (Rofecoxib) was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used as described above.

35. Defendant's conduct in this regard was a contributing cause of William's injuries and death.

WHEREFORE, the Plaintiff demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## COUNT V – FRAUD

36. Plaintiff realleges all prior paragraphs of the Complaint as if fully set out herein.

37. Defendants negligently, recklessly, intentionally and fraudulently made material misrepresentations that VIOXX (Rofecoxib) was safe and effective. Defendants represented VIOXX (Rofecoxib) as safe so that the general consuming public, including William, would rely upon said representations when purchasing said product.

38. Prior to and following the introduction of VIOXX (Rofecoxib) into the market as a prescribable pharmaceutical medication, Defendants set in motion a campaign to market its product. Defendants' representations made concerning VIOXX (Rofecoxib) as a safe and effective drug were made so that William and the general consuming public would rely on said representations and take this drug. In fact, William did rely on Defendants' representations in this regard.

39. At the time Defendants made these representations, they were aware that these representations were false and/or made these representations with reckless disregard to their

- 8 -

truth. As a result of Defendants' fraud and misrepresentation, William suffered injuries and death.

WHEREFORE, the Plaintiff demands judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

### COUNT VI – FRAUDULENT MISREPRESENTATION

40. Plaintiff re-alleges and incorporates the original complaint and all prior paragraphs of this amended complaint as if fully set out herein.

41. Defendant Merck trained its sales representatives, through programs such as the "VIOXX Obstacle Dodge Ball Program," the "Obstacle Response Guide for VIOXX" and "Top Ten Obstacle Handlers" to misstate and misrepresent the truly dangerous nature of VIOXX to prescribing physicians.

42. These programs were specifically designed and promulgated by Defendant Merck to train Merck sales representatives such as the individual defendants Anne Brandon and Lamonde Russell to mislead prescribing physicians about the safety of VIOXX.

43. These programs were specifically designed and promulgated by Defendant Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction, of VIOXX.

44. Defendant Merck trained its sales representative force, including Anne Brandon and Lamonde Russell, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians.

45. These programs were utilized by sales representatives Anne Brandon and Lamonde Russell to "dodge" relevant safety questions by physicians to whom they sold VIOXX.

Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during sales calls or in response to physician questions. These Merck mandated responses misrepresented the safety of VIOXX.

46. The VIOXX Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. (Exhibit A). The "Dodge Ball" program specifically instructs sales representatives, including Anne Brandon and Lamonde Russell, to "dodge" these physician safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." Id. The safety questions to be "dodged" by sales representatives, including Anne Brandon and Lamonde Russell, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of VIOXX," and "The competition has been in my office telling me that the incidence of heart attacks is greater with VIOXX than Celebrex." Id.

47. Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including Anne Brandon and Lamonde Russell. (Exhibits B and C). Exhibit C outlines the "Top Ten Obstacle Handlers" for sales representatives (Exhibit C). The top three "obstacles" listed on the sales guidelines are physician safety questions involving VIOXX related "Cardiovascular Events." (Exhibit C). Sales representatives, including, Anne Brandon and Lamonde Russell are thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of VIOXX. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about VIOXX on May 1, 2000, we provided you with an approved verbal response to use to address customers questions around the incidence rate of MI's [myocardial infarctions] on patients taking VIOXX..." (Exhibit D: Bulletin for VIOXX:

New PIRs Relative to VIOXX GI Outcomes Research Study.) Sales representatives, such as, Anne Brandon and Lamonde Russell were therefore required to misrepresent that VIOXX does not increase the rate of myocardial infarctions' when compared with NSAID's. This misrepresentation is false and inaccurate, yet was intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including William's prescribing physician, by the individually named sales representatives, Anne Brandon and Lamonde Russell. (Exhibit C, Obstacle Response 38; and Exhibit E, page 7; "Bulletin for VIOXX").

48. Defendant Merck's sales representatives, specifically, Anne Brandon and Lamonde Russell utilized the misrepresentations contained in the obstacle avoidance programs to mislead William's treating physician concerning the safety of VIOXX and the occurrence of life threatening side effects, such as myocardial infarctions, from the usage of VIOXX.

49. Defendant Merck and the individually named sales representatives further misrepresented the safety of VIOXX to prescribing physicians by providing written literature to the doctors that contained false statements about VIOXX's safety. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physicians. Exhibit G is the specific "In Response To Your Questions" follow-up literature that misrepresents VIOXX's cardiovascular safety. (Exhibit G; " In Response To Your Questions: Cardiovascular System").

50. Sales representatives, including Anne Brandon and Lamonde Russell, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles. Exhibit H is an example of a form sales representative letter to a questioning physician that misrepresents that VIOXX does not increase the risk of adverse cardiovascular events in users. (Exhibit H.)

- 11 -

51. The culture of misrepresenting the safety of VIOXX by Merck and its sales representatives, including Anne Brandon and Lamonde Russell, was so prevalent that the false and misleading "Obstacle Responses" used by the sales force were manipulated and altered in response to media scrutiny concerning the cardiovascular safety of VIOXX. (Exhibit I: "Action Required: Response to New York Times Article" and Exhibit J: "Action Required" REVISED Response to New York Times Article"). Merck sales representatives utilized such Obstacle Response Revisions to continually mislead prescribing physicians, including William's prescribing physician, about the safety hazards of VIOXX.

52. The underlying inducement for both Merck and its sales representatives, including Anne Brandon and Lamonde Russell, to make repeated misrepresentations to physicians about the safety of VIOXX was, and still is, money. The more doctors prescribing VIOXX, the more money Merck made. The more doctors the sales representatives, such as Anne Brandon and Lamonde Russell, cajoled into prescribing VIOXX, the more money and non-monetary bonuses the sales representatives received. (Exhibits K: "Field Incentive Plan for VIOXX"; and L: "Field Incentive Plan for VIOXX"). Thus, sales representatives, such as Anne Brandon and Lamonde Russell, had a financial interest in propagating and promulgating the false and misleading information (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including William's prescribing physician.

53. Both William and his prescribing physician reasonably relied, to their detriment, upon the false oral and written misrepresentations of Merck, Anne Brandon and Lamonde Russell concerning the safety of VIOXX and the absence of adverse cardiovascular events in users. Such reasonable reliance induced William's treating physician to prescribe him VIOXX and further induced William to utilize the dangerous drug VIOXX. As a direct and proximate

result of William's usage of VIOXX he suffered a heart attack and died. Such event has caused the Plaintiff great pain and suffering, mental anguish, through the loss of the consortium and companionship of her husband.

### COUNT VII – WRONGFUL DEATH

54. Plaintiff repeats and realleges each of the allegations contained in the Complaint.

55. Plaintiff brings this claim on behalf of William's lawful beneficiaries.

56. As a direct and proximate result of the conduct of Defendants and/or the defective nature of VIOXX (Rofecoxib), William suffered bodily injury and resulting pain and anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses of hospitalization, medical nursing care and treatment, loss of earnings, loss of ability to earn money, and premature death.

57. As a direct and proximate result of Defendants' wrongful conduct, William incurred hospital, nursing, and medical expenses. William's beneficiaries have incurred hospital, nursing, medical, funeral and estate administration expenses as a result of William's death. Plaintiff, as wrongful death beneficiary of William, brings this claim on behalf of William's lawful beneficiaries for these damages and for all pecuniary losses sustained by said beneficiaries.

58. By reason of the foregoing, Plaintiff has been damaged by the wanton and willful recklessness of these Defendants who will be liable to Plaintiff. The amount sought herein exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction over this matter.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## VIII – LOSS OF CONSORTIUM

59. Plaintiff alleges all prior paragraphs of this complaint as if fully set out herein.

60. Alabama recognizes a spouse's claim for loss of consortium where, due to injury or death, a spouse has been deprived of the services of the other spouse. Loss of consortium encompasses two basic elements of the marital relationship: loss of support and loss of society, which includes companionship.

61. At the time of his injuries and death, William Lee Turner and Glendora Turner were legally married under the laws of the State of Alabama.

62. Due to the injuries and death of William Lee Turner, because of the actions of the Defendants, the Plaintiff Glendora Turner has suffered and will continue to suffer a loss of consortium.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable, plus cost.

## DAMAGES

63. Upon the trial of this case, it will be shown that Plaintiff was caused to sustain injuries and damages as a direct and proximate result of Defendants' conduct individually, separately, and in concert; and Plaintiff will respectfully request the Court and jury to determine the amount of loss Plaintiff has suffered and incurred, in the past and in the future, not only from

- 14 -

a financial standpoint, but also from the loss of the consortium and companionship of her husband.

64. At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth and continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the public health and safety in conscious disregard of the foreseeable harm caused by this product. Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of the Plaintiff's individual rights. The Plaintiff, therefore, is entitled to punitive damages from the corporate Defendants.

65. Plaintiff hereby requests a trial by jury on all issues in this case and hereby

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the Defendants be cited to appear and answer herein; that upon final trial herein, Plaintiff recovers damages as set forth above from Defendants, including cost of Court, pre-judgment and post-judgment interest at the legal rates, and punitive damages, and that Plaintiff has such other and further relief, both general and special, at law and in equity, to which Plaintiff may be justly entitled under the facts and attending circumstances.

Done this 24 day of June, 2005.

/s/ Paul C.
ANDY D. BIRCHFIELD, JR. (BIR006)
J. PAUL SIZEMORE (SIZ004)
Attorneys for Plaintiff

**OF COUNSEL:**

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL 36103-4160
Phone: (334) 269-2343
Fax:    (334) 223-1236

**JURY DEMAND**

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES**