IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GLENDORA TURNER, Individually, and as Administratrix of the Estate of WILLIAM LEE TURNER, deceased, <br><br> Plaintiff. <br><br> v. <br><br> MERCK & CO., INC., a foreign Corporation; ANNE BRANDON, an Individual; LAMONDE RUSSELL, an Individual; and fictitious defendants A, B, C & D, being those persons, firms or Corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the Plaintiff's injuries and damages, and whose true names and identities are presently unknown to Plaintiff, but will be substituted by amendment when ascertained, <br><br> Defendants. | CASE NO. 2:05-cv-702-M |

## BRIEF IN SUPPORT OF MOTION TO REMAND

Plaintiff Glendora Turner hereby moves the Court to remand this case to the Circuit Court of Bullock County, Alabama. Federal subject matter jurisdiction is not present. This case represents one of many attempts by Defendant Merck to "manufacture" diversity jurisdiction, with total disregard for whether such jurisdiction actually exists. Merck's statement that Plaintiff employs a "common tactic… to attempt to defeat diversity" is an affront to Plaintiff's due process right to seek relief from those who are responsible for her husband's death. (Def.'s

Notice of Removal ¶ 19.) This type of rote removal by Defendants should perhaps lead to development by this and other courts of a doctrine of "fraudulent removal."

The citizenship of the parties to this action is not diverse as required by 28 U.S.C. § 1332. Plaintiff is a resident of Alabama. (Compl. ¶ 2.) Plaintiff's decedent was a resident of Alabama. (Compl. ¶ 3.) Defendant Merck & Co., Inc. (hereinafter "Merck") is a New Jersey corporation with its principal place of business in New Jersey. (Compl. ¶ 4.) Defendants Anne Brandon and Lamonde Russell (hereinafter "Resident Defendants"), both sales representatives of Merck & Co., Inc., are residents of Alabama. (Compl. ¶¶ 5-6.) Plaintiff asserts valid claims under Alabama law against each defendant. Each party to this action is properly joined.

Because the Court lacks subject matter jurisdiction, Plaintiff respectfully urges the Court to grant her motion to remand this action to the Circuit Court of Bullock County, Alabama.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

This product liability action arises from injuries and death suffered by William Lee Turner as a result of taking the prescription drug VIOXX (Rofecoxib), a prescription drug designed to treat pain through reduced inflammation.

William Lee Turner, the decedent, was prescribed and used VIOXX for twenty-one (21) months before suffering a fatal heart attack on June 30, 2003. (Compl. ¶ 15.) As a direct result of taking VIOXX, Plaintiff's decedent suffered injuries including heart attack, physical pain and suffering, emotional distress, and ultimately death. (Compl. ¶¶ 1, 18.)

Defendants designed, manufactured, packaged, marketed, and distributed VIOXX despite having information that the drug causes serious, life-threatening side effects. (Compl. ¶¶ 11-14.) Defendants encouraged the use of this drug through an aggressive marketing campaign including through its detail sales representatives visiting physicians and through direct-to-consumer

advertising. (Compl. ¶ 13.) The direct-to-consumer advertising included advertisements on television and in major magazines and newspapers as well as direct mail. In addition, Defendants misrepresented the effectiveness of VIOXX and concealed the possibility of serious side effects. (Compl. ¶ 14.) Defendants knew of the defective and unreasonably dangerous nature of VIOXX, yet continued to design, manufacture, and sell VIOXX so as to maximize gross sales and profits in conscious disregard of the foreseeable harm caused by VIOXX.

Moreover, though they were aware that VIOXX was unreasonably dangerous as designed, Defendants failed to adequately test VIOXX and failed to warn the public. Defendants also failed to provide Plaintiff's decedent with timely and adequate post-marketing warnings or instructions after becoming aware of the risk of injury from taking VIOXX. (Compl. ¶¶ 17-20.)

Furthermore, Defendants failed to exercise ordinary care and were negligent in the manufacture, marketing, sale, and testing of VIOXX as they placed it into the stream of commerce. Despite knowledge that VIOXX caused serious side effects, Defendants continued to market VIOXX to the public, including Plaintiff's decedent, when there were safer alternative methods of treatment. (Compl. ¶¶ 22-24.)

In addition, Plaintiff asserts that Defendants breached express and implied warranties made in relation to VIOXX. Both before Plaintiff's decedent was first prescribed VIOXX and during the period during which he ingested the drugs, Defendants expressly warranted and represented that VIOXX was safe (Compl. ¶ 27), and impliedly warranted that VIOXX was safe and fit for its intended, ordinary uses. (Compl. ¶ 32.) Plaintiff's decedent reasonably relied on those representations and on Defendants' superior knowledge as to the safety and fitness for intended use of VIOXX. (Compl. ¶ 33.) Contrary to those warranties and representations, VIOXX was not safe and could and did cause serious side effects, and accordingly was not fit for

its intended, ordinary purpose. (Compl. ¶ 34.) At the time Defendants marketed, sold and distributed VIOXX for use by Plaintiff's decedent, Defendants knew their representations about the safety of VIOXX were false or they made those representations with reckless disregard for their falsity. (Compl. ¶¶ 37, 39.) Defendants' wrongful acts or omissions were a contributing or proximate cause of Plaintiff's decedent's injuries and death.

On June 27, 2005, Plaintiff filed suit in the Circuit Court of Bullock County, Alabama. Plaintiff asserts various causes of action against Defendants, including strict product liability under the AEMLD, negligence, breach of express warranty, breach of implied warranty, fraud, fraudulent misrepresentation, wrongful death, and loss of consortium.

On July 29, 2005, Defendants filed a Notice of Removal with this Court, pursuant to 28 U.S.C. §§ 1441(b) and 1446(b). Plaintiff urges the Court to remand this action to state court in accordance with 28 U.S.C. § 1447(c).

### ARGUMENT

It is well settled that federal courts are courts of limited jurisdiction and are "empowered to hear only cases within the judicial power of the United States as defined by Article III of the Constitution" or as authorized by Congress. *Univ. of So. Ala. v. The Amer. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (quoting *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994)).

On a motion to remand, Defendant Merck bears the burden of establishing federal subject matter jurisdiction. *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). All doubts about federal subject matter jurisdiction on removal should be resolved in favor of remand to state court. All questions of fact and controlling law should be resolved in favor of Plaintiff.

## I.   Defendant Merck Has Failed To Obtain Proper Consent For Removal From The Properly Joined Resident Defendants

"The law is clear that under 28 U.S.C. § 1446(a), removal procedure requires that all defendants join in the removal petition." *Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Ins. Co.*, 7 Cir., 1968, 395 F.2d 546. However, courts have stated that only unnecessary nominal parties are not required to join in the petition for removal. *Shattuck v. North British and Mercantile Ins. Co.*, 8 Cir., 1893, 58 F. 609; *Stonybrook Tenants Association, Inc. v. Alpert*, 194 F. Supp. 552 (D.Conn., 1961). The test of whether or not a named defendant is a nominal party depends on the facts in each case, and an examination of the facts, not yet fully developed in the District Court, should indicate that this case should be remanded in order to more fully explore the facts involved. *Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, Intern. Printing Pressmen and Assistants' Union of North America*, 427 F.2d 325, 327 (C.A. Ala. 1970); *see, e.g., Boeing Airplane Co. v. Aeronautical Industrial*, 91 F. Supp. 596 (W.D. Wash., 1950).

Here, removal is improper because Defendant Merck has failed to obtain the consent of the properly joined Resident Defendant sales representatives. These Defendant sales representatives are more than mere "nominal" parties and are indeed properly joined for purposes of this action. Merck has failed to show that these Resident Defendants are nominal parties and consequently, their consent is required in order for this removal to be proper. Because there has not yet been adequate inquiry into the facts of this case in order to determine fully the duties and liabilities of all these Defendants, this Court should declare that these Resident Defendants are more than nominal parties and because their consent for removal was not obtained, this removal by Merck alone is procedurally improper.

5

## II. Diversity Jurisdiction Is Not Present

Defendant Merck contends that diversity jurisdiction is present because the Alabama Defendants, Anne Brandon and Lamonde Russell, are fraudulently joined. Merck's assertion is incorrect and contravenes the settled law of this Court. In her Complaint, Plaintiff states valid state law claims against each resident Defendant.

The removing party bears the burden of proving that the joinder of the Resident Defendants is fraudulent. *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983). That burden is a heavy one. *Frontier Air Lines, Inc. v. United Air Lines, Inc.*, 758 F. Supp. 1399, 1404 (D. Colo. 1989) (quoting *Chesapeake & Ohio Railway Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). The Eleventh Circuit has recognized three situations where joinder could be deemed fraudulent:

1. There is <u>no possibility</u> that the plaintiff can prove a cause of action against any resident defendant;

2. There is outright fraud in the plaintiff's pleading of jurisdictional facts; or

3. Where a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant.

*Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998).

Defendant Merck[PLO5] does not argue that Plaintiff has fraudulently pled jurisdictional facts to bring the Resident Defendants into state court. Further, Merck does not argue that the Resident Defendants have no connection to this action. Rather, Merck's arguments, and this Court's inquiry, are limited to determining whether the Plaintiff has any *possibility* of stating a valid cause of action against the Resident Defendants under Alabama law. Merck improperly argues that joinder of the Resident Defendants is improper because there is no reasonable basis

6

by which Plaintiff may establish or prove liability against the Alabama Defendants. Defendant Merck, however, misstates the appropriate standard in the Eleventh Circuit. To defeat an allegation of fraudulent joinder, a plaintiff need only prove a possibility of recovery:

> If there is even a possibility that a state court would find that the Complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court. The plaintiff need not have a winning case against the allegedly fraudulent defendant; **he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.**

*Triggs*, 154 F.3d at 1287 (citations omitted)(emphasis added). *See Bobby Jones Garden Apts. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968). In making this determination, this Court must evaluate all factual allegations in a light most favorable to the Plaintiff, resolving all contested issues of substantive fact in the Plaintiff's favor and resolving any uncertainties as to the current state of the controlling substantive law in Plaintiff's favor as well. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1536, 1561 (11th Cir. 1989).

Viewing the Complaint's allegations in a light most favorable to the Plaintiff, the Plaintiff has stated valid claims against both Alabama Defendants. Federal diversity jurisdiction is not present.

### III. Merck's Fraudulent Joinder Argument Improperly Relies On Case Law Which Is Not Applicable To This Case

Merck incorrectly states the applicable standard for fraudulent joinder and, in doing so, attempts to let New York and Minnesota courts establish Alabama law even though the standard those courts applied to establish fraudulent joinder is a *lower standard* than that of an Alabama court. Defendant Merck also contends that a Northern District of Alabama Court holding, *Fowler v. Pharmacia and Upjohn Company*, No. CV-04-PT-712-M, Slip. Op. (N.D. Ala. June 24, 2004), should be applied here to bar any and all claims against Merck sales representatives.

Merck asserts that *Fowler* addresses claims against pharmaceutical sales representatives and therefore is applicable here. However, a reading of *Fowler* reveals that the non-diverse defendant at issue in *Fowler* is not, in fact, a sales representative but rather an Account Manager for an entirely separate corporation, which distributes pharmaceuticals to physicians. Furthermore, *Fowler* depended upon New York and Minnesota case law, and can easily be distinguished from the facts in the case at bar.

1. ***In re: Rezulin* And *In re: Baycol* Authority Is The Result Of Applying A Lower Fraudulent Joinder Standard**

Defendants cite the New York District Court case of *In re: Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272 (S.D.N.Y 2001) and the Minnesota District Court case of *In re: Baycol Prod. Liability Litigation*, No. CV-03-4392 (D. Minn. March 26, 2004) in opposition to Plaintiff's Motion to Remand. Neither case is applicable here. Defendant's argument fails because these courts applied a standard of "no reasonable basis," *a lower standard*, to determine whether Plaintiffs' claims against non-diverse Defendants were sufficiently substantial under Alabama law to defeat jurisdiction. There is a critical difference between the fraudulent joinder standard applied in *Rezulin* and *Baycol* and the standard applied in the Eleventh Circuit. The New York Court in *Rezulin* and the Minnesota Court in *Baycol* applied a more relaxed fraudulent joinder standard requiring only "no reasonable basis" for predicting liability on the alleged claims.

The Second and Eighth Circuits applied fraudulent joinder analysis as though it were a premature motion for summary judgment. Under such analysis, where the court makes its decision based solely on the pleadings and affidavits in the record and before formal discovery has taken place, any predictions rendered as to the ultimate liability of the alleged fraudulently joined defendants is inequitable and not in accordance with Eleventh Circuit law. In Alabama, a

8

Plaintiff in defeating a fraudulent joinder argument need not show that he could survive on a motion for summary judgment filed by the in-state Defendants. *Crowe v. Coleman*, 113 F.3d 1536, 1541 (11th Cir. 1997). In fraudulent joinder cases, Alabama and the Eleventh Circuit requires a Defendant to show "*no possibility* that the Plaintiffs can prove any cause of action" against *any* Resident Defendant. *Triggs*, 154 F.3d at 1287 (citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1355 (11th Cir. 1996)) (emphasis added).

In a recent decision by this Court, Judge Fuller cited *Coker*, stating, "If there is *a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." *Coker*, 709 F.2d at 1440-1441 (citing *Davis v. GMC*, 353 F. Supp.2d 1203, 1207 (M.D. Ala. 2005) (emphasis added). This reinforces Plaintiff's argument that he need not have a winning case against a resident defendant, but only have a *possibility* of stating a valid cause of action in order to defeat arguments of fraudulent joinder. *Triggs* 154 F.3d at 1287. This is remarkably different from the standard applied in the *Rezulin* and *Baycol* circuits. The standard, as applied in Alabama courts, would have correctly placed a higher burden on the *Rezulin* and *Baycol* defendants in establishing fraudulent joinder. Consequently, the holdings in *Rezulin* and *Baycol* cannot be relied upon to determine liability under Alabama law in this case.

### 2. *Fowler* Is Not Controlling And Is Easily Distinguishable Upon The Facts

As stated above, the non-diverse Defendant in *Fowler* is not a field sales representative, but rather an Account Manager, an important distinction noted by the court in its order. Moreover, the *Fowler* Court incorrectly relied on the reasoning in *Rezulin* and *Baycol* which, as stated above, applied an incorrect test in determining fraudulent joinder. As a consequence, that

9

court too applied a summary judgment-type standard not in accordance with the law of the Eleventh Circuit.

Notwithstanding the inapplicability of *Fowler* to the facts here, or the application of an entirely different fraudulent joinder standard in determining the outcomes of the authority on which it relied, the *Fowler* court was only partially persuaded by the reasoning in *Rezulin* and *Baycol,* stating "those courts go further than this court would go in that they may exclude claims against even active, knowledgeable sales reps" *Fowler*, at 30.

Plaintiff believes the *Fowler* decision is incorrect under the settled laws of the Eleventh Circuit. Notwithstanding that contention, the facts in *Fowler* are markedly different making it inapplicable to the present case.

### IV. Plaintiff Has Stated Valid Product Liability (AEMLD) Claims Against The Resident Defendants

Plaintiff states valid claims under the AEMLD against the Resident Defendant sales representatives – Anne Brandon and Lamonde Russell. To establish a prima facie case under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD), a plaintiff must demonstrate that:

(1) he suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) Showing the above elements, a plaintiff has proved a prima facie case although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

10

>   (b)   the user or consumer has not bought the product from, or entered into any contractual relation with, the seller.

*E.g., Casrell v. Altec Industries, Inc.*, 335 So. 2d 128, 132-33 (Ala. 1976); *Atkins v. American Motors Corp.*, 335 So. 2d 134, 141 (Ala. 1976).

In her Complaint, Plaintiff alleges that the Resident Defendant sales representatives marketed, sold, supplied and/or otherwise distributed VIOXX. (Compl. ¶¶ 17-19.) Plaintiff alleges VIOXX was defective and unreasonably dangerous as designed, was unreasonably dangerous due to inadequate testing, and was defective as marketed due to inadequate warnings or instructions. Moreover, Plaintiff alleges that Defendants failed to warn Plaintiff's decedent of the dangers of VIOXX therapy. Also, Plaintiff alleges that Defendants failed to provide post-marketing warnings to Plaintiff's decedent after he began to take the drug. (Comp. ¶ 20.) Plaintiff further alleges that as a direct and proximate result of Defendants placing VIOXX on the market and Plaintiff's ingestion of the drugs, Plaintiff suffered injuries including heart attack, and death. (Compl. ¶ 20.) These allegations are sufficient to state a cause of action under AEMLD against both Resident Defendants.

Defendant Merck incorrectly asserts that Resident Defendant sales representatives cannot be "sellers" within the meaning of the AEMLD and cannot be held individually liable. The Resident Defendant sales representatives may properly be held liable under the AEMLD for their participation in the marketing of VIOXX. *Ex parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc.*, 496 So. 2d 774, 775 (Ala. 1986). The Resident Defendant sales representatives marketed VIOXX to physicians, including Plaintiff's decedent's physician by "calling" on physicians, distributing samples that were given to patients, conducting educational seminars, and distributing sales literature. Defendants in communications to physicians compared the efficacy of VIOXX to other existing drugs, sought to distinguish VIOXX from other drugs already on the

11

market, and worked to persuade physicians to prescribe VIOXX to their patients. The Resident Defendant sales representatives provided physicians with VIOXX product information (and samples'?). Throughout these activities, the Resident Defendant sales representatives worked to increase sales of VIOXX.

At the time Plaintiff was prescribed and used VIOXX, Defendant Anne Brandon was a sales representative of Defendant Merck. As such, Defendant Brandon advertised, marketed and/or promoted VIOXX, fraudulently suppressed material information regarding the safety and efficacy of VIOXX, misrepresented the safety and efficacy of VIOXX to Plaintiff's decedent's physician, and placed VIOXX in the stream of commerce for personal profit or benefit.

Plaintiff anticipates that discovery will show that Defendant sales representatives' knowledge concerning VIOXX was superior to the knowledge held by the physicians to whom they made sales calls. Plaintiff also anticipates that discovery will show that the Plaintiff's decedent's prescribing physician relied on information provided by Defendants. Resident Defendant sales representatives provided to Plaintiff's decedent's physician incorrect, misleading or incomplete information (such as inadequate warnings of risks of harm and adverse effects from the use of VIOXX) – and Plaintiff's decedent's physician passed this erroneous information on to consumers. Plaintiff's decedent relied on such information through the representations of his physician. If these allegations are proven to be true, which Plaintiff expects that they will be, a finding of individual liability under AEMLD against the Resident Defendant sales representatives would be consistent with the rule under Alabama law that "officers and employees of a corporation are liable for torts in which they have personally participated, irrespective of whether they were acting in a corporate capacity." *Ex parte Charles Bell Pontiac*,

496 So. 2d at 775 (citing *Candy H. v. Redemption Ranch, Inc.*, 563 F. Supp. 505, 513 (M.D. Ala. 1983)); *See Chandler v. Hunter*, 340 So. 2d 818, 822 (Ala. Civ. App. 1976).

In *Clay v. Brown & Williamson Tobacco Corp.*, 77 F. Supp. 2d 1220, 1224 (M.D. Ala. 1999), plaintiff alleged that account managers for Brown & Williamson were liable under AEMLD for the distribution of cigarettes. In that case, plaintiff alleged that the account managers actively serviced customer accounts, had superior knowledge to consumers of the addictiveness and dangers of tobacco, and actively participated in the sale of cigarettes. *Clay*, 77 F. Supp. 2d at 1224. The District Court followed the Court's decisions in *Seaborn v. R.J. Reynolds Tobacco Co.*, No. 9-T-1540, 1996 WL 943621 (M.D. Ala. December 30, 1996), and *Jenkins v. R.J. Reynolds Tobacco Co.*, 96-T-1489 (M.D. Ala. Dec. 30, 1996). The Court found that the account executives were not fraudulently joined and that under AEMLD, claims against employees of a corporation who had participated in the distribution of a dangerous product are valid under AEMLD, regardless of whether the person was acting within his corporate capacity. *Clay*, 77 F. Supp. 2d. at 1224.

In *Clay*, *Seaborn* and *Jenkins*[PL08], the defendant tobacco companies made the same argument that Defendant Merck makes here regarding the joinder of sales representatives. Relying on the general principle that officers or employees of a corporation are liable for torts in which they have personally participated, the District Court found in all three cases that to the extent a manufacturer defendant allegedly violated AEMLD, "it acted through its employees; the company does not employ ghosts." *Clay*, 77 F. Supp. 2d at 1224; *Seaborn*, 1996 WL 943621, at *3 (both cite *Ex parte Charles Bell Pontiac*, 496 So. 2d at 775 in support). The District Court allowed plaintiffs to pursue the distributors and employee sales representatives individually -- even in the absence of any personal contact with the plaintiffs -- and to substitute new individual

defendants in the event plaintiffs had named the wrong individuals at the outset. *Id.* In each case, the court rejected defendants' claim of fraudulent joinder and remanded the case to state court.

Other United States District Courts also have consistently rejected arguments that in-state defendant sales representatives are fraudulently joined in the context of an AEMLD action involving a defective drug. Judge Inge P. Johnson remanded the case of *Barry Pace, et al. v Parke-Davis*, No. 3:00-3046 (N.D. Ala. Nov. 21, 2000). Judge Robert Propst remanded the case of *Donald McCaffery v. Warner-Lambert Co.*, et al., No. 4:00-2848 (N.D. Ala. Dec. 8, 2000) and *Acton v. R.J. Reynolds Tobacco Co.*, No. 96-C-2737-W (N.D. Ala. Oct. 23, 1996).

Defendants who distribute dangerous products, as well as their employees, may be held liable under the AEMLD. Plaintiff has stated valid claims against the Resident Defendant sales representatives under the AEMLD.

### V. Plaintiff Has Alleged Valid Claims Of Negligence And Breach Of Warranty Against The Resident Defendants

Defendant Merck contends Plaintiff's claims for negligence and breach of warranty against the Resident Defendant sales representatives are not proper because they owed no duty to Plaintiff's decedent regarding VIOXX. On the contrary, Defendants had a duty to warn ultimate consumers of the potential dangers associated with the use of VIOXX.

Through their participation in the marketing of VIOXX to physicians, the Resident Defendant sales representatives *voluntarily assumed* a duty to Plaintiff because Plaintiff's reliance on such statements was reasonably foreseeable. *J.B. Bowden v. E. Ray Watson Co., Inc.*, 587 So. 2d 944, 946 (Ala. 1991); *King v. Natl. Spa & Pool Inst., Inc.*, 570 So. 2d 612, 614 (Ala. 1990). The absence of a direct relationship between the Resident Defendant sales representatives and Plaintiff does not bar a claim of negligence *or* a breach of warranty claim. *King*, 570 So. 2d

14

at 616 (negligence); *Bishop v. Faroy Sales*, 336 So. 2d 1340, 1345 (Ala. 1976) (breach of warranty).

In numerous cases in which plaintiff asserted theories of negligence and/or breach of warranty in conjunction with or as alternatives to an AEMLD claim, the Supreme Court of Alabama has addressed the evidence supporting the jury's verdict or the submission of the case to the jury on each theory, separately and independently, *without* questioning whether such theories can be asserted against sales representatives. *Flagstar Enter., Inc. v. Davis*, 709 So. 2d 1132, 139 (Ala. 1997) (evidence sufficient to support negligence claim to jury).[1] As these cases indicate, it is well settled under Alabama law that Plaintiff may maintain claims against the Resident Defendant sales representatives under the AEMLD simultaneously with claims for negligence, breach of express warranty, and breach of implied warranty.

## VI. Plaintiff Has Alleged Valid Claims Of Fraud And Fraudulent Misrepresentation And Suppression Against The Resident Defendants

Under Alabama law, in order to state a claim for fraud and fraudulent misrepresentation, a plaintiff must show that the defendant made a misrepresentation of material fact, that he made it willfully to deceive, recklessly, without knowledge, or mistakenly, that the misrepresentation was justifiably relied on by the plaintiff under the circumstances, and that the misrepresentation caused damage as a proximate consequence. Ala. Code Ann. § 6-5-101; *Harrington v. Johnson-Rast & Hays Co.*, 577 So.2d 437 (Ala.1991). Plaintiff alleges that the Resident Defendant sales

---

[1] *See Yarbrough v. Sears Roebuck & Co.*, 628 So. 2d 478, 481-83 (Ala. 1993) (circumstances under which negligent failure to warn case may be submitted to jury); *Clarke Industries, Inc. v. Home Indemnity Co.*, 591 So. 2d 458, 461-62 (Ala. 1991) (directed verdict or JNOV precluded on negligent failure to warn claim); *Deere & Co. v. Grose*, 586 So. 2d 196, 198 (Ala. 1991) (directed verdict improperly denied where negligent failure to warn claim not supported by evidence); *Yamaha Motor Co., Ltd. v. Thornton*, 579 So. 2d 619 (Ala. 1991) (evidence sufficient to support jury verdict in favor of plaintiff on claims of design and manufacturing defect under AEMLD, negligence and wantonness); *Gurley v. American Honda Motor Co., Inc.*, 505 So. 2d 358, 361 (Ala. 1987) (discussing prima facie case of claim of negligent failure to warn of dangers from defective product); *Rutledge v. Arrow Aluminum Industries, Inc.*, 733 So.2d 412, 417 (Ala. Civ. App. 1998) (claims of design and manufacturing defects under AEMLD, negligent failure to warn).

15

representatives negligently, recklessly, intentionally and fraudulently made material misrepresentations that VIOXX was safe. (Compl. ¶ 37.) The Resident Defendants did so with the intent to induce physicians to prescribe and for consumers, including Plaintiff's decedent, to purchase VIOXX. (Compl. ¶ 52.) Moreover, Plaintiffs allege that "At the time the Defendants made these representations, the Defendants were aware of the falsity of these representations and/or made these representations with reckless disregard to the truth." (Compl. ¶ 39.) Lastly, Plaintiff alleges that "[a]s a result of Defendants' fraud and misrepresentation, William suffered injuries and death." (*Id.*)

Defendant Merck asserts, in its Notice of Removal, that claims of fraud cannot be maintained against the Resident Defendant sales representatives Anne Brandon and Lemonde Russell. In so arguing, they suggest that Defendants made no representations to Plaintiff. Merck also asserts that Plaintiff failed to plead her claim of fraudulent misrepresentation with particularity[PLO9]. However, in her complaint, Plaintiff sufficiently alleges that Defendants fraudulently misrepresented and/or suppressed material information regarding the safety and efficacy of VIOXX and its harmful side effects in order to induce physicians to prescribe these drugs and to induce consumers, including Plaintiff's decedent, to purchase VIOXX. (Compl. ¶¶ 41-52.) Moreover, Plaintiff alleges that Defendants misrepresented and/or suppressed the fact that VIOXX was not safe and that Defendants were under a duty to communicate this information to Plaintiff. (Compl. ¶¶ 39, 53.) Defendants argue that they had no duty to disclose information to Plaintiff, that there was no relationship between Defendants and Plaintiff, and that Defendants' failure to disclose the harmful effects of taking VIOXX did not constitute fraudulent misrepresentation or suppression.

16

District Courts in Alabama have addressed on numerous occasions the issue of whether sales representatives are fraudulently joined in relation to claims of fraudulent misrepresentation and fraudulent suppression. The following is a list of cases where a District Court has reviewed allegations of fraudulent misrepresentation and suppression similar to those in this case and found that plaintiff had indeed alleged valid claims under Alabama law. In each situation, the District Court rejected the Defendants' argument regarding fraudulent joinder and remanded the case to state court. *Floyd v. Wyeth*, No. 03-C-2564-M (N.D. Ala. Oct. 20, 2003) (Clemon, J.); *Crittenden v. Wyeth*, No. 03-T-920-N (M.D. Ala. Nov. 21, 2003) (Thompson, J.); *Terrell v. Wyeth*, No. CV-03-BE-2876-S (N.D. Ala. Dec. 12, 2003) (Bowdre, J.) ("Although the plaintiffs' claims against defendant Parker appear to raise novel questions of Alabama state law, this court will not speculate that the plaintiffs have *no* possibility of establishing a cause of action against this non-diverse defendant. Little, if any, discovery has been done to-date in this case; thus, it would be premature for this court to make rash decisions regarding the nature and the timing of the injury sustained by the plaintiffs, or the employment history of defendant Parker. Nor can the court conclusively determine that plaintiffs would not be successful in urging its various theories under Alabama law."); *Ballard v. Wyeth*, No. 03-T-1255-N (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Brunson v. Wyeth*, No. 03-T-1167-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Blair v. Wyeth*, No. 03-T-1251-S (N.D. Ala. Jan. 23, 2004) (Thompson, J.); *Storey v. Wyeth*, No. CV-04-BE-27-E (N.D. Ala. Jan. 30, 2004) (Bowdre, J.); *Cash v. Wyeth*, No. 03-RRA-3378-E (N.D. Ala. Feb. 3, 2004) (Armstrong, Mag. J.); *Marshal v. Wyeth*, No. CV-04-TMP-179-S (N.D. Ala. Feb. 18, 2004) (Putnam, Mag. J.); *McGowan v. Wyeth*, No. CV-04-TMP-298-S (N.D. Ala. Feb. 24, 2004) (Putnam, Mag. J.); *Johnson v. Wyeth*, No. CV-04-TMP-224-S (N.D. Ala. Feb. 23, 2004) (Putnam, Mag. J.); *Bradford v. Wyeth*, No. 03-P-3157-S (N.D. Ala. Feb. 27, 2004)

(Proctor, J.); *Smith v. Wyeth*, No. 04-P-226-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Boudreaux v. Wyeth*, No. CV-04-P-227-M (N.D. Ala. Feb. 27, 2004) (Proctor, J.); *Bridges v. Wyeth*, No. 04-AR-0297-J (N.D. Ala. Mar. 2, 2004) (Acker, J.); *Hough v. Wyeth*, No. 04-H-393-S (N.D. Ala. Mar. 5, 2004) (Hancock, J.); *Brogden v. Wyeth*, No. 04-T-068-S (M.D. Ala. Mar. 8, 2004) (Thompson, J.); *Reeder v. Wyeth*, No. 04-T-066-N (M.D. Ala. Mar. 8, 2004) (Thompson, J.); *Eaton v. Wyeth*, No. CV-04-P-380-M (N.D. Ala. Mar. 9, 2004) (Proctor, J.); *Allen v. Wyeth*, No. 04-CV-0238-T (M.D. Ala. Apr. 9, 2004) (Thompson, J.); *Chestnut v. Wyeth*, No. 04-CV-0295-T (M.D. Ala. May 3, 2004) (Thompson, J.); *King v. Wyeth*, No. 04-CV-0409-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Culpepper v. Wyeth*, No. 04-CV-0411-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Braden v. Wyeth*, No. 04-CV-0384-T (M.D. Ala. May 24, 2004) (Thompson, J.); *Cross v. Wyeth*, No. 03-0882-BH-M (S.D. Ala. Mar. 29, 2004) (Hand, J.); *Bennett v. Wyeth*, No. 04-CV-0416-T (M.D. Ala. June 2, 2004) (Thompson, J.).[2]

District Courts in Alabama have rightly found that plaintiffs who allege claims of fraudulent misrepresentation and suppression against sales representatives of drug companies have alleged valid claims under Alabama law. The Resident Defendant sales representatives are not fraudulently joined in this case. Diversity jurisdiction is not present.

## CONCLUSION

In all of its efforts, Defendant Merck has failed to cite any directly applicable or controlling authority and consequently they have failed in their burden of proving that there is no possibility that Plaintiff can establish a cause of action against the Resident Defendant sales representatives Anne Brandon and Lamonde Russell. For the reasons outlined above, this Court lacks subject matter jurisdiction. Therefore, Plaintiff respectfully urges the Court remand this action in its entirety to the Circuit Court of Bullock County, Alabama.

---

[2] See 'Exhibit A,' attached and filed with this brief.

_____
ANDY D. BIRCHFIELD, JR. (BIR006)
J. PAUL SIZEMORE (SIZ004)
Attorneys for Plaintiff

**OF COUNSEL:**
BEASLEY, ALLEN, CROW, METHVIN,
  PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone: (334) 269-2343
Fax: (334) 223-1236

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document upon the parties as listed below by placing a copy of same in the United States Mail, first class, postage prepaid on this the _22_ day of August, 2005.

Robert C. "Mike" Brock
Benjamin C. Wilson
R. Austin Huffaker, Jr.
RUSHTON, STAKELY, JOHNSTON & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 263-4157

_____
Of Counsel