## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | |
|---|---|
| **GLENDORA TURNER,** ) | **RECEIVED** |
| **Individually, and as** ) | |
| **Administratrix of the Estate of** ) | |
| **WILLIAM LEE TURNER,** ) | AUG 2 9 2005 |
| **Deceased,** ) | |
| ) | CLERK |
| **Plaintiff,** ) | U.S. DISTRICT COURT |
| ) | MIDDLE DIST. OF ALA. |
| **v.** ) | **Case No.: 2:05-cv-702-M**T |
| ) | |
| **MERCK & CO., INC., a foreign** ) | |
| **Corporation, ANNE BRANDON,** ) | |
| **an individual, LAMONDE** ) | |
| **RUSSELL, an individual,** *et al.,* ) | |
| ) | |
| **Defendants.** ) | |

## OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Plaintiff has sought to evade federal jurisdiction by joining her product liability claims against Merck – which meet all of the requirements for federal diversity jurisdiction – with untenable claims against in-state sales representatives. Plaintiff is also asking this Court to expend its judicial resources to address issues that are due to be decided by the VIOXX® MDL court. As set forth below, the Court should defer consideration of Plaintiff's motion pending MDL transfer. However, if the Court chooses to consider Plaintiff's motion to remand rather than staying the case, the Court should deny the motion because Plaintiff's effort to avoid federal jurisdiction is barred by the doctrine of fraudulent joinder.

**Background**

This lawsuit concerns the use of the prescription medication VIOXX® by Plaintiff's decedent, William Lee Turner.   VIOXX® is a pharmaceutical manufactured, marketed and distributed by Defendant Merck & Co., Inc. ("Merck").  In an attempt to defeat diversity jurisdiction, Plaintiff has also named as defendants two non-diverse individual Merck employees (Lamonde Russell and Anne Brandon) (the "sales representatives").[1]  Not surprisingly, Plaintiff moved to remand this case based solely on the argument that the inclusion of these defendants destroys complete diversity.   Pending before the Court are several motions including Merck's Motion to Stay and Plaintiff's Opposition to a stay and her Motion for Remand.

This is one of numerous cases involving the prescription drug VIOXX® — some of which are pending in this Court— that have been filed since the drug was voluntarily withdrawn from the market by Merck in 2004.   In this case, the plaintiff brings claims against the sales representatives in a transparent attempt to prevent Defendant from defending this case in federal court.

On July 29, 2005, Defendant timely removed this case to federal court based upon federal diversity jurisdiction and moved for a stay of all proceedings pending

---

[1]  Upon information and belief, Anne Brandon has not yet been served with a copy of the summons and complaint.

MDL transfer. Removal is appropriate because there is complete diversity of citizenship between the Plaintiff and the properly joined defendants, and the amount in controversy satisfies the jurisdictional minimum. *See* 28 U.S.C. § 1332. Plaintiff then filed this motion for remand on August 22, 2005.

## ARGUMENT

This Court should defer consideration of the motion pending MDL transfer – the course taken by courts around the country in more than 125 VIOXX-related cases in which plaintiffs moved to remand. Motions to remand addressing the same fraudulent joinder issues under Alabama law are already pending in cases that are, and others that are expected to be, before the MDL Court. Indeed, this Court has previously determined in a VIOXX® case with very similar, if not identical allegations, that a stay pending MDL transfer would be appropriate despite the existence of a pending motion to remand. *See Yolanda King v. Merck et al*, 2:05-cv-165-T (M.D. Ala. 2005). Deferring consideration of Plaintiff's motion pending MDL transfer will thus promote the purposes of the MDL proceeding – judicial efficiency and consistent rulings. However, if the Court does rule on Plaintiff's motion, remand should be denied because all of the properly joined parties are diverse and the jurisdictional threshold is satisfied.

**I.    The Court Should Refrain From Ruling On Plaintiff's Motion to Remand And Should Stay All Proceedings In This Case.**

As a threshold matter, this Court should refrain from ruling on Plaintiff's Motion to Remand pending transfer of this case to *In re VIOXX Products Liability Litigation*, MDL-1657, the MDL proceeding established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from VIOXX® (the "VIOXX® cases"). *See In re VIOXX Prods. Liab. Litig.*, 360 F. Supp. 2d 1352 (J.P.M.L. 2005). As set forth in Merck's Motion to Stay and Reply to Plaintiff's Opposition to Merck's Motion to Stay (which Merck incorporates herein by reference), the most appropriate course of action is to stay all proceedings—including consideration of remand motions—now that this case has been tagged for transfer. *See* Tag along letter of August 5, 2005, Exhibit A hereto. This is the approach taken in more than 700 VIOXX® cases around the country, including more than 125 with pending remand motions. *See, e.g., Jones v. Merck & Co., et al.*, CV-05-427-RDP (N.D. Ala. 2005); *Woods v. Merck*, 05-cv-0525-CG-M (S.D. Ala. 2005). As the MDL Panel held in its transfer order, "motions to remand . . . can be presented to and decided by the transferee judge." *In re VIOXX*, 360 F. Supp. 2d at 1354. Consistent with this transfer order, there are several cases presenting fraudulent joinder issues identical to those here and originating in Alabama that have been transferred or will soon be transferred to the

VIOXX MDL Court. *See* Defendant's Reply to Opposition to Motion to Stay at Exhibit C. Staying the present case will allow the fraudulent joinder issues raised by these cases to be decided in a coordinated manner. *See In re Ivy*, 901 F.2d 7, 9 (2d Cir. 1990) (where "[t]he jurisdictional issue in question is easily capable of arising in [more than one court] . . . [c]onsistency as well as economy is . . . served [by transferring and consolidating cases as to which remand motions are pending]"); *Bd. of Trs. of the Teachers' Ret. Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002) ("The question, then, is whether other courts are facing or are likely to face similar jurisdictional issues in cases that have been or may be transferred to a multidistrict proceeding."); *Benjamin v. Bayer Corp.*, No. 02-0886, 2002 U.S. Dist. LEXIS 9157, at *5 (E.D. La. May 16, 2002) ("[B]ecause the issues involved in this remand are likely to be common to other transferred cases, the policies of efficiency and consistency of pre-trial rulings are furthered by a stay of the proceedings."). Accordingly, Merck respectfully urges the Court to defer consideration of Plaintiff's motion pending final MDL transfer.

## II.    The Court Has Diversity Jurisdiction Over Plaintiff's Claims Because Each Non-Diverse Defendant Has Been Fraudulently Joined.

### A.    The non-diverse defendants need not formally assent to, or join in, removal since they are fraudulently joined in an attempt to avoid federal jurisdiction.

Should the Court choose to consider the merits of Plaintiff's Motion to Remand, the motion should be denied because the Court has diversity jurisdiction

over Plaintiff's claims. As an initial matter, Plaintiff's procedural argument that Merck has not met the prerequisites to removal because of an alleged failure to obtain the "proper consent" of the sales representative defendants is misplaced. Merck contends that Plaintiff joined the individual sales representatives as defendants solely to defeat federal jurisdiction. In such a context, it is clear that "persons named as defendants to prevent removal need not join in removal." *See Moore's Federal Practice* §107.11[1][d] and §107.14[2][c][iv].

Indeed, since Plaintiff concedes that the amount-in-controversy requirement is satisfied, the only question facing the Court is whether the non-diverse sales representatives are fraudulently joined. As set forth below, Plaintiff has no intention of seeking relief from these defendants nor could she if she so desired. Accordingly, these defendants must be ignored for purposes of determining jurisdiction.

**B.     The Sales Representatives Are Fraudulently Joined Because There Is No Reasonable Basis for Predicting That Plaintiff Can Prevail On Any Of The Claims Against Them.**

As the United States Supreme Court has long recognized, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921). The doctrine of fraudulent joinder is designed

to prevent plaintiffs from naming parties of the same citizenship merely to avoid removal of an action to federal court. *See Pensinger v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003). A defendant is fraudulently joined when there is "no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). In making this determination, this Court should determine its jurisdiction over the case "based upon the plaintiff's pleadings at the time of removal." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) (emphasis added). As set forth below, this standard is clearly met here because Plaintiff cannot prevail on any cause of action against the individual sales representatives.

Plaintiff alleges several causes of action against the sales representatives – AEMLD, negligence, breach of express and implied warranties, fraud, fraudulent misrepresentation, wrongful death, and loss of consortium. As set forth below, Plaintiff has no reasonable possibility of prevailing on any of these causes of action. First, professional representatives cannot be held liable under the AEMLD or breach of warranty claims because those causes of action only exist against "sellers," which by definition does not include professional representatives. Second, individual employees are not liable under Alabama law for negligence or wantonness under these circumstances as the claims are barred by the learned

intermediary doctrine. Third, Plaintiff cannot establish reliance as required for the fraud claims. Accordingly, the individual defendants are fraudulently joined and their citizenship should be ignored.

### 1. **Employees are not "sellers" and thus cannot be liable under AEMLD.**

To the extent that Plaintiff asserts an AEMLD claim (Count I) against the sales representatives, there is no reasonable basis to predict that she can prevail on these claims because the AEMLD applies only to "sellers" and "manufacturers" and the sales representatives are not "sellers" and "manufacturers" of the prescription medicine VIOXX®. *See Ala. Code* § 6-5-501 (1975) (defining "original seller" as "[a]ny person, firm, corporation . . . or other legal or business entity, which in the course of business or as an incident to business, sells or otherwise distributes a manufactured product (a) prior to or (b) at the time the manufactured product is first put to use by any person or business entity who did not acquire the manufactured product for either resale or other distribution in its unused condition or for incorporation as a component part in a manufactured product which is to be sold or otherwise distributed in its unused condition"); *see also Turner v. Azalea Box Co.*, 508 So. 2d 253, 254 (Ala. 1987) (to state a cause of action under the AEMLD, "the plaintiff must prove that the defendant manufactured and/or sold the allegedly defective product"). Here there is affirmative proof through the declaration of Lamonde Russell that he is not a

"seller" for purposes of Alabama law. *See* Declaration of Lamonde Russell, Ex. F to Notice of Removal). Therefore, the representatives cannot be held liable under the AEMLD. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 286-87 (S.D.N.Y. 2001) ("The sales representative . . . neither manufactured, sold, nor supplied [the drug] . . . [but was] an agent of the manufacturer and seller. In light of the Alabama Supreme Court's clear explanation of AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case."); *In re Baycol Prods. Litig.*, MDL-1431 (D. Minn. Mar. 26, 2004) (discussing liability of a sales representative under the AEMLD).

As set forth in the Notice of Removal in this case, the United States District Court of Minnesota's decision in *In re Baycol Products Litigation*, MDL-1431 (D.C. Minn. Mar. 26, 2004), is particularly instructive. First, it serves as a reminder of the reasons why this Court should defer a decision on remand to the VIOXX® MDL Court, where this motion can be heard along with motions to remand transferred to the MDL with the same fraudulent joinder issue. There, in each of the cases considered by the Baycol MDL Court, the plaintiffs brought suit in Alabama state court concerning the plaintiffs' use of the pharmaceutical Baycol. In addition to the manufacturer (Bayer), the plaintiffs also sued several district managers and sales representatives. The cases were removed to federal court on

the basis that the non-diverse district managers and sales representatives were fraudulently joined. The plaintiffs moved to remand the case, raising arguments similar to those advanced by Plaintiff's counsel in this case. The district court denied this motion and, as to the AEMLD claim, stated the following:

> Defendants argue that the district managers and sales representatives are not 'sellers' of Baycol, as contemplated by the AEMLD. The Court agrees. The purpose of the AEMLD, a judicially created doctrine, is to 'plac[e] the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of those products. *Atkins v. American Motors Corp., et al.*, 3335 So. 2d 134, 139 (Ala. 1976). Although no Alabama state court decision specifically addresses whether a district manager or sales manager could be held liable under the AEMLD, other courts have found that Alabama would not impose such liability. For example, in an unpublished opinion from the Southern District of Alabama, the district court specifically held that a sales manager cannot be held liable under the AEMLD. *Bowman v. Coleman Company, Inc.*, Civil Action No. 96-0448-P-C (S.D. Ala. 1996), Attached as Ex. G to Removal Petition. The court recognized that the defendant sales manager 'had no authority to compel or prevent the distribution of particular products . . . for such product distribution decisions are vested in the [] home office, rather than in its individual store managers.' Id. at *7. The court also noted that it is the corporation that reaps the profits from the distribution from products, and has the participatory market connection with the manufacturer through which the corporation can recoup costs as a result of seller liability, not the sales manager. 'In short, the policy goals underlying the AEMLD would not be advanced in any way by holding persons such as Mr. Elkins liable in their role as store managers or sales representatives.'

*Id.* at 4-5. The *In re Baycol Products Litigation* court recognized that neither the language nor purpose of the AEMLD supports a claim for individual liability under the doctrine. As such, Plaintiff has no possibility of recovering from

the individual sales representatives on this claim.

2.   **Alabama law does not hold sales representatives individually liable for negligence as such claims are barred by the learned intermediary doctrine.**

There is also no reasonable basis to predict that Plaintiff would prevail on her negligence claim (Count II) against the sales representatives. First, plaintiffs in products-liability cases may proceed on negligence and wantonness theories only against "manufacturers" and "sellers." *Ford Motor Co. v. Thomas*, 231 So. 2d 88, 92 (Ala. 1970); *accord Norton Co. v. Harrelson*, 176 So. 2d 18, 20 (Ala. 1965) (on a negligence theory, "[t]he defendant must be either the manufacturer or seller of the injury-producing article"). As discussed above, the sales representatives are not sellers or manufacturers of VIOXX. *See* Russell Declaration. Second, the sales representatives cannot be individually liable under Alabama law for the alleged negligence or wantonness of Merck in manufacturing, selling, or warning of the alleged effects of VIOXX® because no sufficient basis for individual liability has been pled. *See, e.g., Galactic Employer Servs. v. McDorman*, 880 So. 2d 434 (Ala. Civ. App. 2003) (noting that a corporate officer or employee must have direct, personal participation in the challenged corporate activity to be held personally liable for negligence).

Indeed, Plaintiff has not addressed the sales representatives' liability for

negligence in any legitimate way.  First, a negligence claim is vaguely stated against a singular "Defendant" in the Complaint.[2]  The claim, moreover, focuses an alleged failure to use reasonable care "in the design, manufacture, marketing, sale, testing and/or distribution" of VIOXX®.  *See* Complaint at ¶22.  It is undisputed that the sales representatives were completely uninvolved with the design, manufacture, or testing of VIOXX®.  Thus, the only aspect of this claim that could arguably relate to the sales representatives is the alleged failure to use reasonable care in the "marketing" or "distribution" of the medication.  *See id.*[3]  This claim, however, is barred by the learned intermediary doctrine, applied by the Alabama Supreme Court since *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301 (Ala. 1984).  In *Stone*, the Alabama Supreme Court determined that "the adequacy of the accompanying warning determines whether the drug, as marketed, is defective, or unreasonably dangerous."  *See Stone*, 447 So. 2d at 1304.  The Alabama Supreme Court observed that the prescribing physician is best suited to evaluate the characteristics of the medication vis-a-vis the needs and background

---

[2] Vague allegations against "Defendants" are generally insufficient to justify remand.  *See, e.g., Lyons v. Am. Tobacco Co.*, No. Civ. A. 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (stating that there is "no better admission of fraudulent joinder" of the in-state defendants than plaintiff's failure "to set forth any specific factual allegations" against them).  *See also Shah v. Wyeth Pharms., Inc.*, No. CV 04-8652 DT (MANx), slip op. at 7 (C.D. Cal. Jan. 18, 2005) ("[A]llegations against 'defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity' on the part of each of the non-diverse defendants") (citing *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 391-92 (5th Cir. 2000).

[3] The declaration of Lamonde Russell establishes that he did not take part in the testing or manufacturing of VIOXX® and is undisputed in this regard.

of the patient.    Consequently, the court concluded that "[p]harmaceutical companies . . . selling prescription drugs are required to warn only the prescribing physician, who acts as a 'learned intermediary' between manufacturer and consumer." *Id.; See also Morguson v. 3M Company*, 857 So. 2d 796, 801-02, n. 1 (Ala. 2003) ("courts rely on the expertise of the physician to 'bridge the gap' in cases where the medical product and its related warning are too complex to be fully appreciated by the patient," citing *Toole v. Baxter Healthcare Corp.*, 235 F. 3d 1307, 1314 (11th Cir. 2000)).    Accordingly, plaintiff's claims against the sales representatives for negligence and wantonness are barred by the learned intermediary doctrine.

### 3. The warranty claims also fail because the employees are not "sellers."

Plaintiff's breach of warranty claims (Counts III and IV) against the sales representatives fail to state a claim for the same reasons as the AEMLD claim, *i.e.*, the sales representatives are unquestionably not "sellers" or "manufacturers" of VIOXX®. *See Ala. Code* §§7-2-313, 7-2-314 & 7-2-315 (both express and implied warranty claims refer to the creation of warranties by the "seller"); *Ala. Code* §7-2-103(1)(d) (defining "seller" as "a person who sells or contracts to sell goods"); *see also Wellcraft Marine v. Zarzour*, 577 So. 2d 414 (Ala. 1990) (noting that Alabama statutes defining the warranties of merchantability and fitness for a particular purpose both apply to the "seller"); *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.

2d 272, 286 (S.D.N.Y. 2001) ("The defendant sales representatives, however, were not 'sellers' of the product for purposes of warranty; the 'seller' who impliedly warranted the merchantability of Rezulin was the pharmaceutical manufacturer."); *In re Baycol Prods. Litig.*, MDL 1431 (D. Minn. Mar. 26, 2004) (concluding that warranty claims could not be asserted against pharmaceutical sales representatives because they were not "sellers" or "manufacturers" of Baycol).

The UCC is explicit on this point: express and implied warranty provisions apply only to "sellers." *Ala. Code* § 7-2-313(1) ("Express warranties by the seller are created as follows . . ."); *id.* § 7-2-314(1) ("a warranty that the good shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind"). Moreover, under Alabama law, in order for an express or implied warranty to arise, there must be privity of contract between the buyer and seller. *See e.g.*, *State Farm Fire & Cas. Co. v. J.B. Plastics, Inc.*, 505 So. 2d 1223, 1227 (Ala. 1987); *Weaver v. Dan Jones Ford, Inc.*, 679 So. 2d 1106, 1113 (Ala. Civ. App. 1996). There is clearly no privity between Plaintiff and the sales representatives. As the Russell declaration shows, he never interacted with Plaintiff or sold VIOXX to her. *See* Russell Declaration.[4]

---

[4] Moreover, any warranties would run not between these individual defendants and plaintiff, but rather between *their employers* and plaintiff. *E.g.*, *Hillburn v. Fletcher Oil Co.*, 495 So. 2d 613, 615 (Ala. 1986) ("Generally when an agent, acting within her real or apparent authority, enters a contract on behalf of her principal, only the principal is bound and subject to suit on the

4.    **Plaintiff's claims of fraud must fail.**

Finally, Plaintiff has no reasonable basis to predict that she could recover on claims of fraud and fraudulent misrepresentation (Counts V and VI) against the sales representatives. First, an essential element of these claims is reliance on the alleged misrepresentation. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-105 (Ala. 2002) (fraud); *Ex Parte Household Retail Servs.*, 744 So. 2d 871, 879 (Ala. 1999) (suppression). Nevertheless, Plaintiff only summarily alleges that her decedent and his physician relied on the sales representatives' alleged misrepresentations regarding VIOXX®. Complaint at ¶¶38, 53. Plaintiff fails to identify how William Lee Turner personally relied on any alleged misrepresentation made to his physician, or even that her doctor relayed any of this alleged misinformation to Mr. Turner. Plaintiff's argument appears to be that, because alleged falsehoods were told to William Lee Turner's physician, these representations are automatically imputed to Mr. Turner. The Complaint, however, fails to allege that Mr. Turner was even aware of the alleged statements made to the prescribing physician. Without some evidence or even allegation that

---

contract"). Finally, even if the sales representatives could have been parties to warranties under the UCC, the UCC would have required the Plaintiff to give these defendants notice of the breach of the warranty. *See* Ala. Code § 7-2-607; *Parker v. Bell Ford, Inc.*, 425 So. 2d 1101, 1103 (Ala. 1983) (notice is condition precedent to action for breach of warranty); *Consolidated Pipe & Supply Co. v. Stockham Valves & Fittings, Inc.*, 365 So. 2d 968, 971 (Ala. 1978). Plaintiff gave no notice of the purported breach of warranty.

Plaintiff had knowledge of the alleged misrepresentations, these claims must fail for lack of requisite reliance.

Furthermore, Plaintiff's physician in this case is presumably a licensed physician with extensive training who makes his or her own determination regarding medication and treatment of his or her patients.[5]  As such, the learned intermediary doctrine, *supra*, bars Plaintiff's claims against the individual defendants for failure to warn.

Second, Plaintiff cannot establish claims of fraudulent misrepresentation and suppression against the sales representatives because she has failed to plead fraud with the specificity required by Rule 9(b) of the Fed. R. Civ. P. and the Ala. R. Civ. P.  Both rules are identical, and both call for dismissal if averments of fraud are not stated "with particularity."  Here, Plaintiff fails to show the "time, place and purported contents of the false representations" allegedly made by the representatives.  *Estate of Scott v. Scott*, 907 F. Supp. 1495, 1498 (M.D. Ala. 1995); *see* Ala. R. Civ. P. 9(b) (Committee Comments on 1973 Adoption, subdivision (b) (plaintiff must show the "time, place and the contents or substance of the false representation, the fact misrepresented, and the identification of what has been obtained").

---

[5] The identity of Plaintiff's physician is noticeably absent from the complaint in this case.

Plaintiff goes to great lengths to describe the marketing campaign for VIOXX®, but fails to state how, when, where, and most importantly, if Plaintiff's deceased heard of this campaign. Nor does Plaintiff state when, where, or if Plaintiff's physician allegedly received this information. The fact that Plaintiff's counsel has possession of Defendant's marketing materials does not link those marketing materials to the prescription of VIOXX® to Plaintiff. Further, a detailed description of these materials without details regarding if and how they were presented to the prescribing physician, or, more importantly, to Plaintiff's deceased, does not satisfy the requirements of Rule 9(b).[6] *See Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1221 (S.D. Ala. 1998) (failure to allege particular facts supporting claims against in-state defendants violated Rule 9(b) and supported finding of fraudulent joinder).[7]

---

[6] "The pleader . . . must use more than generalized or conclusionary statements when setting out the allegations of fraud. The pleader must state the place, the time, the contents of the false misrepresentations, the fact misrepresented, and an identification of what has been obtained." *Lyde v. United Ins. Co. of America*, 628 So. 2d 665, 670 (Ala. Civ. App. 1993) (citing *Robinson v. Allstate Ins. Co.*, 399 So. 2d 288 (Ala. 1981)) (quoted in *Anderson v. Clark*, 775 So. 2d 749, 752 n.5 (Ala. 1999)).

[7] Because Plaintiff has not identified the physician involved in the alleged fraud, Plaintiff has not provided Merck with adequate notice of her fraud claims. Accordingly, Plaintiff's fraud claims are barred by Rule 9(b) because Plaintiff fails to plead these fraud-based claims with the requisite particularity. *See United States ex rel. Clausen v. Laboratory Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("this Court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards"), *cert. denied*, 537 U.S. 1105 (2003); *Mixon v. Cason*, 622 So. 2d 918, 920 (Ala.) ("The plaintiff did not plead with the specificity required by Rule 9(b)" and "the trial court properly dismissed"), *reh'g denied*, 639 So. 2d 961 (Ala. 1993).

Third, an essential element of Plaintiff's fraudulent misrepresentation claim is that the sales representatives *knew* of the alleged falsity of their representations. *See Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 104-05 (Ala. 2002) (discussing elements of fraud claims under Alabama law). Plaintiff's conclusory allegations about this alleged knowledge, however, are insufficient to warrant remand. Addressing complaints with similarly conclusory allegations of knowledge on the part of territory representatives, the Rezulin MDL judge held that such allegations were insufficient to warrant remand. *Rezulin*, 133 F. Supp. 2d at 283-84. Those allegations do not satisfy an "essential element[] of fraud, most obviously that the sales representatives knew that Rezulin was unsafe at the time they spoke but withheld the truth to mislead plaintiffs." *Id.* at 283 & 284 n. 29 (*citing San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Co., Inc.*, 75 F.3d 801, 812-13 (2d Cir. 1996) (to satisfy knowledge requirement of fraud claim, plaintiff must allege circumstances to show that defendants knew their representations were false when made)).[8]

As the Rezulin MDL Court held, remand should be denied where, as here, plaintiffs "pepper[] their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the

---

[8] Although these quotations are continued in the section of the opinion dealing with two fraudulent joinder cases from Mississippi, the Court also applies this reasoning to the Alabama

catch-all attribution to 'defendants.'" *Id.* at 283. Indeed, the Rezulin MDL Court subsequently denied remand in two actions naming a sales representative based on the conclusory claims against her and Plaintiffs' failure to refute her affidavit. *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 140 (S.D.N.Y 2001); *see generally Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) ("conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal"). Accordingly, Plaintiff's conclusory allegations of the sales representatives' knowledge of the alleged risks of VIOXX are insufficient to warrant remand.

In short, Plaintiff's complaint falls far short of the heightened pleading standard for fraud, and as numerous courts have recognized, her motion to remand should be denied on this ground as well.

### C.   Plaintiff has not presented any evidence to support remand.

Plaintiff does not present any contrary affidavits, depositions, or other evidence to support remand. Plaintiff cannot defeat removal by leaving the Russell declaration uncontested. *See, e.g., Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 724 (5th Cir. 2002) (concluding that defendant "carried its burden of proving the jurisdictional amount by submitting an undisputed affidavit").

---

cases later in the opinion saying "the Alabama complaint suffers from the same defect as the Mississippi cases joining sales representatives . . ." *Id.* at 286.

### D.    The *Wyeth* cases are inapplicable.

Plaintiff also cites several cases involving defendant Wyeth in the diet-drug litigation from this district in an attempt to override the persuasive authority of the MDL Courts that have addressed the fraudulent joinder of Alabama sales representatives. *See* Brief in Support of Motion to Remand at pp. 16-18. It is important to note that in at least some of these cases, Plaintiffs actually submitted affirmative evidence of reliance through the affidavit of the prescribing physician. *See, e.g., Cash v. Wyeth, et al*, Civil Action No: 03-RRA-3378-E (N.D. Ala.). These cases are therefore distinguishable from the facts of the present case, where Plaintiff fails to refute either the legal arguments set forth in the motion to remand or the declaration filed by a sales representative. This is precisely the conclusion reached in the *Baycol* MDL when the *Wyeth* opinions were rushed before the Court; Judge Davis held that these decisions were distinguishable and did not warrant the remand of cases involving the fraudulent joinder of sales representatives. *In re Baycol Prods. Litig.*, MDL-1431 (D. Minn., Mar. 26, 2004).

## CONCLUSION

For these reasons, as well as those stated in the Notice of Removal and Motion to Stay Proceedings Pending Transfer to Multidistrict Proceeding, Defendant respectfully requests that the Court overrule Plaintiff's Opposition to the Motion to Stay and allow the MDL Court to address Plaintiff's Motion to Remand. Alternatively, Plaintiff's Motion to Remand should be denied.

DATED this 29th day of August, 2005.

One of the Attorneys for Defendant,
Merck & Co., Inc.

OF COUNSEL:
Robert C. "Mike" Brock
Benjamin C. Wilson
R. Austin Huffaker, Jr.
RUSHTON, STAKELY, JOHNSTON, & GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 206-3100
Facsimile: (334) 263-4157

## CERTIFICATE OF SERVICE

I hereby certify that I have served the above and foregoing document upon all interested parties by placing a copy of same in the United States Mail, postage prepaid and properly addressed on this the 29th day of August 2005 as follows:

Andy D. Birchfield, Jr.
J. Paul Sizemore
BEASLEY, ALLEN, CROW,
METHVIN, PORTIS, & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160

OF COUNSEL